NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 30 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOHN R. MARSHALL; THE JOHN MARSHALL IRREVOCABLE TRUST DTD FEBRUARY 14, 2017, through its trustee, Michael A. Marshall,

Plaintiffs - Appellees,

v.

AMERIPRISE FINANCIAL SERVICES, LLC,

Defendant - Appellant.

No. 24-4575

D.C. No.
2:24-cv-00112-DJC-AC

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted October 9, 2025
Submission Vacated October 9, 2025
Re-Submitted March 30, 2026
San Francisco, California

Before: S.R. THOMAS, NGUYEN, and BRESS, Circuit Judges.

Ameriprise Financial Services, LLC (Ameriprise) appeals the district court's

denial of its motion to compel arbitration in this lawsuit alleging fraud and breach

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of fiduciary duty in connection with the purchase of annuities under various brokerage agreements. Per the district court's order following our limited remand, the district court had jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship. We have jurisdiction under 9 U.S.C. § 16. Because the record presents a genuine dispute of material fact over whether a valid arbitration agreement was formed, we vacate and remand for an evidentiary hearing.

Under the Federal Arbitration Act, a district court must determine "whether a valid agreement to arbitrate exists" before ordering arbitration. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). A party opposing arbitration can invoke generally applicable contract defenses to show that no valid agreement was formed. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). If a genuine dispute of material fact as to the existence of a valid arbitration agreement exists, "the court must proceed without delay to a trial on arbitrability." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021); *see* 9 U.S.C. § 4.

As an initial matter, the district court correctly determined that California law governs the question whether a valid arbitration agreement was formed in this case. A federal court sitting in diversity applies the choice of law doctrine of the state in

which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–497 (1941). Even assuming that California and Minnesota law materially differs in this case, California is the jurisdiction whose policies would be more substantially impaired by application of Minnesota law. *See Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 320–21 (1976) (setting out California's comparative impairment approach to choice of law); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006) (same). John Marshall was a California resident during the relevant period, his interactions with the Ameriprise employee, Kambiz Ghazanfari, occurred in California (where Ghazanfari worked), and John Marshall executed the brokerage agreements in California. The only connection Minnesota has to this dispute is the fact that Ameriprise is headquartered in Minnesota. Considering the more numerous and relevant contacts between this dispute and California, as well as California's interests in regulating financial brokers within its borders and protecting California consumers, the district court correctly determined that California law applies to the issue of whether the arbitration agreements were fraudulently procured.

Under California law, a party can avoid arbitration by showing that his assent to the arbitration provision was procured by fraud in the execution. *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 413 (1996). A party can make that showing by establishing that he was vulnerable and that the counterparty seeking to enforce the arbitration agreement owed him a fiduciary duty to explain the existence

and meaning of the arbitration provision before execution. *See Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 961 (2008) ("[W]hether the scope of [the] fiduciary duty encompasse[s] oral disclosure of the arbitration clause . . . depends on the specific facts of the case. Such factors may include, for example, the relative sophistication and experience of the vulnerable party." (internal citations omitted)). A party invoking this defense has the burden of proving it by a preponderance of the evidence. *Rosenthal*, 14 Cal. 4th at 413.

In this case, the district court concluded that the arbitration clauses were procured by fraud in the execution because John Marshall suffers from dyslexia, and because Ghazanfari, who was Marshall's broker, failed to specifically flag the existence of the arbitration provisions in the brokerage agreements. *See Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1533 (1989) ("[T]he relationship between a stockbroker and his or her customer is fiduciary in nature . . . ."). To prove that the brokerage agreements were procured by fraud in the execution, the plaintiffs submitted a declaration by John Marshall describing his dyslexia and his relationship with Ghazanfari. Plaintiffs also submitted a letter from 1986 written by a counselor at the University of California, Berkeley, where John Marshall attended school, which described his learning disability and difficulty reading.

However, the record reveals a genuine dispute over whether John Marshall suffered from a vulnerability substantial enough that Ghazanfari was required to

disclose affirmatively the presence of the arbitration provisions. *See Brown*, 168 Cal. App. 4th at 961. When John Marshall executed the brokerage agreements beginning in 2010, he was a working professional in the insurance industry with substantial investment and trading experience. John Marshall's declaration also stated only that it would be "difficult" for him to read, not that he could not do so. And the letter from UC Berkeley, which is several decades old, is not necessarily indicative of how John Marshall's dyslexia affected him at the time he entered the brokerage agreements, and it also describes Marshall's "ability level" as "excellent."

Because the record is disputed as to whether Ghazanfari owed a fiduciary duty to John Marshall to orally communicate the arbitration provisions, we remand for an evidentiary hearing to determine the nature of John Marshall's relationship with Ghazanfari and the extent of John Marshall's disability at the time the arbitration agreements were executed. *Hansen*, 1 F.4th at 672; *see* 9 U.S.C. § 4 (prescribing that when there is a dispute over the formation of a valid arbitration agreement, "the court shall proceed summarily to the trial thereof").

**VACATED AND REMANDED.**[1]

---

[1] Appellees' motion for judicial notice, Dkt. No. 23, is denied. The parties shall bear their own costs on appeal.